# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of November 3, 2017 by and between BARTACO ROSWELL, LLC ("Bartaco" or "Defendant"), on the one hand, and ALEX FRIEDMAN ("Friedman" or "Plaintiff"), on the other hand.  Together, Defendant and Plaintiff are referred to as the "Parties."

## RECITALS

WHEREAS, on or about June 12, 2017, Plaintiff filed a lawsuit captioned *Alex Friedman v. Bartaco Roswell, LLC a/k/a Bartaco Chastain Park*, Case No. 1:17-cv-02154-ODE, in the U.S. District Court for the Northern District of Georgia against Defendant Bartaco (hereinafter, the "Litigation");

WHEREAS, Plaintiff's Complaint alleges that Defendant failed to pay Plaintiff proper overtime compensation as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA");

WHEREAS, on or about August 2, 2017, Defendant filed its Answer denying the allegations of Plaintiff's Complaint and setting forth its affirmative and other defenses;

WHEREAS, at all times, Defendant has vigorously denied, and continues to deny, any wrongdoing in connection with the claims asserted in the Litigation; and

WHEREAS, the Parties desire to resolve their claims, disputes and disagreements without any admission of liability.

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual recitals, covenants and other good and valuable consideration recited herein, the receipt and legal sufficiency of which each party hereby acknowledges, agree as follows:

## SETTLEMENT TERMS

1.      **Payment.** In consideration for signing this Agreement and the fulfillment of the promises contained herein, Defendant shall pay Plaintiff and his counsel a total sum of Fifteen Thousand Dollars and Zero Cents ($15,000.00) (the "Settlement Payment"). Defendant shall deliver the following checks to Plaintiff's counsel as set forth in this Agreement:

        (a)     One check made payable to Alex Friedman, in the gross amount of Two Thousand Five Hundred and Sixty Dollars and Fifteen Cents ($2,560.15), less all appropriate taxes and withholdings to represent settlement of Plaintiff's claim(s) for alleged unpaid wages.  Defendant will issue an IRS W-2 Form for this amount.

(b)      One check made payable to Alex Friedman, in an amount of Six Thousand Dollars and Zero Cents ($6,000.00) to represent settlement of his claim(s) for liquidated damages and other non-wage damages.  Defendant will issue an IRS Form 1099 for this amount to Plaintiff specifically checking box 3 and designating the payment as "other income."

(c)      One check made payable to Pankey & Horlock, LLC, in the amount of Six Thousand Four Hundred and Thirty Nine Dollars and Eighty Five Cents ($6,439.85) to represent Plaintiff's attorneys' fees and other costs.  Defendant will issue an IRS Form 1099 for this amount specifically checking box 3 and designating the payment as "other income."

Plaintiff and his counsel agree to provide Defendant the requisite tax identification numbers and other information, including executed W-9 forms, as requested by Defendant to execute the Settlement Payment.

The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred, except as otherwise provided in this Paragraph, and that neither Party nor its attorney(s) will seek any award of attorneys' fees, costs, or other monies from the other Party.

**2.      Taxes.**  Plaintiff shall be solely responsible for, and is legally bound to make payment of, any taxes determined to be due and owing (including penalties and interest related thereto) by him to any federal, state, local or regional taxing authority as a result of the Settlement Payment.  Plaintiff agrees to indemnify and hold Defendant harmless with respect to any taxes, interest, penalties, or any other costs or monies related to the Settlement Payment.  Defendant does not make any warranty or representation to Plaintiff or his counsel regarding the tax consequences of the Settlement Payment—including, but not limited to, the treatment of certain monies as non-wage damages.

**3.      Court Approval of Agreement and Dismissal with Prejudice.**  The Parties agree that within three (3) business days after all Parties have executed this Agreement, they shall file a Joint Motion to Approve Settlement and Dismiss Lawsuit with Prejudice (along with a proposed order).  Such motion shall seek judicial approval of the Agreement and dismissal with prejudice all of Plaintiff's claims against Defendant. The Parties will cooperate and take all necessary steps to effectuate final judicial approval of this Agreement and dismissal of this lawsuit.  The failure to secure the dismissal of the Litigation *with prejudice*, for whatever reason, will nullify Plaintiff's right to the Settlement Payment.

**4.      Timing of Payment:**  The checks described in Paragraph No. 1 of this Agreement shall be delivered to Plaintiff's counsel within ten (10) business days after the occurrence of all of the following: (1) the execution of this Agreement by all Parties; (2) the judicial

approval of this Agreement and dismissal of the Litigation *with prejudice*; and (3) Defendant's counsel's receipt of executed W-9s from Plaintiff and his counsel.


5.      **Mutual Release.**  In exchange for the consideration described herein, Plaintiff, on behalf of himself and his heirs, successors, agents, and all other related persons or entities, and Defendant, on behalf of itself, its insurer(s), and its subsidiary, parent, affiliate, and successor companies, hereby unconditionally and irrevocably release, remise and forever discharge each other of and from any and all complaints, actions, suits, charges, and any claims for counsel fees and costs, unpaid or withheld wages, severance, demands, costs, losses, benefits, bonuses, or commissions, and/or expenses, of any nature whatsoever, asserted or unasserted, named or unnamed, suspected or unsuspected, which they ever had, now have, or hereafter may have against each other arising out of or relating to Plaintiff's employment relationship with, and/or termination of his employment relationship with, Defendant from the beginning of time through the date of this Agreement, including, without limitation, any and all actions, causes of action, claims for or charges of breach of contract, defamation or other tort, wrongful termination, unpaid compensation, and/or for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Rehabilitation Act of 1973, the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990, the Equal Pay Act, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Employee Retirement Income Security Act of 1974, the Lilly Ledbetter Fair Pay Act of 2009, the Sarbanes-Oxley Act of 2002, all as amended (if applicable), and any other federal, state, local and/or municipal human rights statutes, fair employment statutes, laws and/or regulations pertaining to employment, the termination of employment, or discrimination in employment.  It is expressly understood and agreed that the release contained in this Agreement is a general release.


6.      **No Outstanding or Known Future Claims/Causes of Action.** Each Party affirms that he or it has not filed with any governmental agency or court any type of action, report, or complaint against the other Party (other than the Litigation), and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in Paragraph No. 5 above.


7.      **No Admission of Liability.** The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement of disputed claims and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by Defendant and is not to be construed as an admission that Defendant engaged in any wrongful, tortious or unlawful activity. Defendant specifically disclaims and denies any liability to Plaintiff or that it engaged in any wrongful, tortious or unlawful activity.


8.      **Covenant Not to Sue.**  A "covenant not to sue" is a legal term, which means that a party promises not to file a lawsuit against another in court.  It is different than the general releases contained in Paragraph No. 5 above.  Plaintiff agrees not to sue Defendant, its insurer(s), its former, current, and future related companies, divisions, subsidiaries, affiliates, and parents, as well as its former, current, and future, directors,

officers, members, employees, agents, and representatives (collectively, "Released Parties") in any forum for any claim covered by the waivers and releases of Paragraph No. 5. If Plaintiff violates this Agreement by suing the Released Parties, Plaintiff shall be liable for reasonable attorneys' fees and other litigation costs incurred in defending such a lawsuit. This Paragraph shall not apply if Plaintiff sues to enforce the terms of this Agreement or for a breach of this Agreement.

9.     **Rights and Claims Excluded from Waivers and Releases.** This Agreement does not waive any rights that cannot be waived by law. Plaintiff is waiving, however, any right to recover money in connection with any agency charge or investigation pertaining to his employment with Defendant. Similarly, Plaintiff is waiving any right to recover money in connection with a charge filed by any other individual, by the EEOC, or by any other city, local, state, or federal government agency pertaining to his employment with Defendant.

10.     **Mutual Non-Disparagement.** The Parties agree that, unless required to do so by legal process, Plaintiff and Defendant's officers and directors will not make any disparaging statements or representations, either directly or indirectly, whether orally or in writing, by word or gesture, to any person whatsoever, about the other Party or any of the other Party's directors, officers, employees, agents or representatives.

For purposes of this Paragraph, a disparaging statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character or product quality of the person or entity to whom the communication relates.

11.     **No Future Employment Relationship between the Parties.** Plaintiff agrees to never seek or accept rehire or employment, either directly, through a temporary agency, or by any other method, with Defendant or its current or future affiliated companies (collectively, "Defendant's Companies"). Plaintiff agrees that Defendant's Companies shall have no obligation to engage his services in any capacity (*e.g.,* as an employee, contractor, temporary employee, or consultant) in the future and that any application or request for employment or work may be denied solely based on Plaintiff's breach of this provision of the Agreement.

12.     **Agreement is Legally Binding.** The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs and estates. Moreover, the persons and entities referred to in Paragraph Nos. 5 and 8 above, but not a Party, are third-party beneficiaries of this Agreement.

13.     **Entire Agreement.** The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the Parties hereto.

14.     **Full Payment for Work Performed.**   Plaintiff acknowledges that, with the payments set forth in this Agreement, he has been fully compensated by Defendant for all unpaid wages for hours allegedly worked, including unpaid minimum wages, overtime wages, liquidated damages, attorneys' fees and any other damages allegedly owed by Defendant, and that no other form of compensation or other damage of any kind is owed to him by Defendant.

15.     **New or Different Facts: No Effect.** Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

16.     **Interpretation.** Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation.

17.     **Governing Law and Choice of Forum.** This Agreement is made and entered into within and shall be governed by, construed, interpreted and enforced in accordance with the laws of the State of Georgia, without regard to the principles of conflicts of laws. Any action to enforce this Agreement shall be brought only in a proper state or federal court within the State of Georgia.

18.     **Reliance on Own Counsel.** In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.

19.     **Counterparts.** This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20.     **Drafting.**   The Parties agree that they jointly have agreed to the terms and language used herein and that no ambiguity will be construed against any party for having "drafted" this Agreement.

21.     **Authority to Execute Agreement.** By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that

Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants and/or other restrictions placed upon them by their respective entities.

**22.     Facsimile/Electronic Signatures.**  Execution delivered by facsimile or electronic mail to the Parties' counsel of record shall be deemed effective as if executed in original.

### AGREED TO BY THE PARTIES, WITH INTENT TO BE LEGALLY BOUND.

**ALEX FRIEDMAN**

Signature: _____

Date: __11/6/17_____

**BARTACO ROSWELL, LLC**

Signature: _____

By (Print): _____

Title: _____

Date: _____

WSACTIVELLP:9436672.2

Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants and/or other restrictions placed upon them by their respective entities.

**22.** **Facsimile/Electronic Signatures.** Execution delivered by facsimile or electronic mail to the Parties' counsel of record shall be deemed effective as if executed in original.

**AGREED TO BY THE PARTIES, WITH INTENT TO BE LEGALLY BOUND.**

**ALEX FRIEDMAN**

Signature: _____

Date: _____

**BARTACO ROSWELL, LLC**

Signature: _____

By (Print): _Kutina Ruhumbika_

Title: _Director of Human Resources_

Date: _11/8/17_

WSACTIVELLP:9436672.2